UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-21-13
```

-------------------------------------------------------x

In re LIGHTINTHEBOX HOLDING CO., LTD.
SECURITIES LITIGATION

-------------------------------------------------------x

13 Civ. 6016 (PKC)

MEMORANDUM
AND ORDER

CASTEL, District Judge:

        Before the Court are five motions to appoint lead plaintiff and consolidate three putative class actions brought under the federal securities laws by shareholders of LightInTheBox Holding Co., Ltd. ("LITB"). Bai v. LightInTheBox Holding Co., Ltd. Case No. 13 Civ. 6016 (PKC); Pearlman v. LightInTheBox Holding Co., Ltd. Case No. 13 Civ. 6929 (PKC); Sabile v. LightInTheBox Holding Co., Ltd. Case No. 13 Civ. 7310 (PKC).[1] For the reasons set forth below, the motion of plaintiff Youhua Zheng is granted, and the four motions filed by other movants are denied.[2]

A. Background & Consolidation

        LITB is a publically-traded online retailer which is headquartered in Beijing, China and whose American Depository Shares ("ADS") are listed on the New York Stock Exchange. On August 19, 2013, LITB issued a press release announcing its financial results for the second quarter of 2013. The company's results fell short of market expectations, and LITB's stock price dropped approximately 40% from the close of the market on August 19, 2013 to the close of the market on August 20, 2013. The three complaints in this case were

---

[1] Unless otherwise noted, all docket references herein refer to the docket for 13 Civ. 6016.
[2] A sixth such motion was filed by Mitchell Su, but this motion was withdrawn on November 1, 2013. (Dkt. No. 26)

filed on August 27 (the "Bai Complaint"), September 30 (the "Pearlman Complaint"), and October 16 (the "Sabile Complaint").

The complaints in the three actions each name as defendants LITB, Quji Guo, LITB's Chief Executive Officer; and Xheng Hue, LITB's Chief Financial Officer.  The complaints allege that the defendants made false and misleading statements prior to the company's August 19 earnings announcement.  The complaints are largely overlapping and raise common questions of law and fact.  Consolidation under Rule 42(a), Fed. R. Civ. P. is appropriate.  The actions are consolidated under the above caption and docket number.  The Clerk is directed to administratively close 13 Civ. 6929 (PKC) and 13 Civ. 7310 (PKC).

### B.  Appointment of Lead Plaintiff & Lead Counsel

Two groups of investors, each calling itself "LightInTheBox Investor Group" ("LITBIG 1" and "LITBIG 2," respectively), Lawrence Bernard, Youhua Zheng, and Anpu Zhu, each with separate counsel, seek to be appointed as lead plaintiff in the consolidated action.  The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ."  15 U.S.C. § 78u-4(a)(3)(B)(i).  The statute provides a rebuttable presumption that a "person or group of persons" who is a named plaintiff or movant and otherwise satisfies Rule 23, Fed. R. Civ. P., is the most adequate plaintiff if that person or group of persons "has the largest financial interest in the relief sought by the class . . . ."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

1. Investor Groups

Here, neither "LightInTheBox Investor Group" merits recognition as a group for the purpose of calculating the "largest financial interest" under the PSLRA. LITBIG 2, represented by Brower Piven, claims a combined loss lower than that of individual movants Zheng and Zhu. LITBIG 1 is identified by its counsel, Cohen Milstein, as "a small group of five experienced individual investors who have jointly devised a plan" for litigation in the instant action. (Dkt. No. 24 at 5) In a joint declaration, the investors stated that they held a conference call and established procedures for overseeing counsel and communicating with one another; they also agreed that disputes among the group would be settled by majority vote, with each investor receiving votes equal to the number of shares purchased. (Dkt. No. 25-2) The group's five members range from a "Chief Financial Officer" with fourteen years of investing experience to an "advertising enterpriser" with two, and there is no evidence of any relationship between the group members prior to the events at issue in this litigation. Id.

Aside from the fact that each member of LITBIG 1 is represented by the same lawyers, there is no common connection between the individual group members other than their sharing claims held by all members of the putative class. There is no contention that the members of the so-called "group" had any awareness of one another or communication until after they first contacted the Cohen Milstein law firm. While the group notes that each group member shares the common purpose or goal of obtaining a recovery in the lawsuit, the same may be said of any class member who does not opt out of the class. LITBIG 1 has not alleged facts sufficient to show the cohesiveness necessary to achieve appointment as lead plaintiff.

Further, the voting procedure adopted by LITBIG 1 is at odds with the PSLRA's presumption that the movant with the largest financial interest will control the

litigation.  In the event of a dispute, the agreed-upon procedure provides for resolution by

majority vote, with each group member getting a number of votes equal to the number of

shares purchased.  (Dkt. No. 25-2 at ¶ 12)  The practical result of this system is that Hai Li,

the group member with the fourth-largest loss suffered, will have total control over all group

decisions, because he purchased far more LITB shares than all the other group members

combined.  (Dkt. No. 25-4)  Thus, appointing LITBIG 1 as lead investor would give

authoritative control over the conduct of this lawsuit to a single investor who is not the

investor that suffered the largest financial loss, as called for by the PSLRA.

              In an often-cited opinion issued shortly after the passage of the PSLRA, Judge

Cedarbaum of this Court addressed the perils of a "group" created by lawyers:

> To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs
> defeats the purpose of choosing a lead plaintiff.  One of the principal
> legislative purposes of the PSLRA was to prevent lawyer-driven litigation.
> Appointing lead plaintiff on the basis of financial interest, rather than on a
> "first come, first serve" basis, was intended to ensure that institutional
> plaintiffs with expertise in the securities market and real financial interests in
> the integrity of the market would control the litigation, not lawyers. . . .  To
> allow lawyers to designate unrelated plaintiffs as a "group" and aggregate their
> financial stakes would allow and encourage lawyers to direct the litigation.
> Congress hoped that the lead plaintiff would seek the lawyers, rather than
> having the lawyers seek the lead plaintiff. . . .
>
> Counsel have not offered any reason for appointing an aggregation of unrelated
> institutional and individual investors as lead plaintiffs other than the argument
> that the language of the statute does not expressly forbid such a result.

In re Donnkenny Inc. Securities Litigation, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (Judge

Cedarbaum) (citations omitted); accord In re Razorfish, Inc. Securities Litigation, 143 F.

Supp. 2d 304, 308–09 (S.D.N.Y. 2001) (Judge Rakoff) (rejecting group as lead plaintiff

because, inter alia, it had no independent existence, its members had no prior relationship and

group was an "artifice cobbled together by cooperating counsel"); In re Veeco Instruments,

Inc. Securities Litigation, 233 F.R.D. 330, 334 (S.D.N.Y. 2005) (Judge McMahon) ("Courts (including this one) view such aggregations of individual shareholders with disapproval.") (citation omitted)); In re Pfizer Inc. Securities Litigation, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (Judge Owen) ("Nothing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible 'financial interest' figure under the PSLRA . . . and I reject it."); In re Tarragon Corp. Sec. Litig., No. 07 Civ. 7972 (PKC), 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) (the undersigned); Teran v. Subaye, No. 11 Civ. 2614 (NRB), 2011 WL 4357362, at *3 (Sep. 16, 2011) (Judge Buchwald) (declining to recognize a group that was "assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action.") (citation omitted); Rosian v. Magnum Hunter Res. Corp., 13 Civ. 2668 (KBF), 2013 WL 5526323, at *3 (S.D.N.Y. Oct. 7, 2013) (Judge Forrest) (finding "insufficient evidence that the members of the group will act collectively and separately from their lawyers").

"The issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may." Tarragon, 2007 WL 4302732 at *2 (citing Weltz v. Lee, 199 F.R.D. 129, 132-33 (S.D.N.Y. 2001)). But to enjoy the rebuttable presumption that the statute confers, "a proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). LITBIG 1 has failed to make this showing, and their claim for group recognition is rejected. LITBIG 2, also a lawyer-generated "group," is smaller than LITBIG 1 and suffers from the same defects. Its application is also denied.

2.   Loss Calculation

Movants Youhua Zheng and Anpu Zhu claim losses of $234,312.60 and $234,055.60, respectively.   However, both movants have overstated the losses potentially recoverable under the PSLRA.   Mr. Zheng's loss calculation uses actual post-Class Period sales prices, while the PSLRA limits recoverable damages by requiring that losses be calculated using the higher of the actual sale price and the mean price of the issuer's securities from the end of the Class Period to the actual sale date.   15 U.S.C. § 78u-4(e)(1)-(2). Applying this method, as both Mr. Zheng and Mr. Zhu concede in their opposition motions, results in a total loss of approximately $229,506.

For his part, Mr. Zhu's loss calculation includes trading losses incurred prior to the issuer's August 19 corrective disclosure.   Under Dura Pharmaceuticals v. Broudo, 544 U.S. 336, 342-43 (2005), such losses are not recoverable in a securities fraud action because the losses are not proximately caused by the defendant's misstatements.   While the Dura court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint lead counsel.   See, e.g., In re Comverse Tech., Inc. Sec. Litig., 06 Civ. 1825 (NGG) (RER), 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) (Judge Garaufis).   In excluding such losses from measuring the "largest financial interest" under the PSLRA, courts generally apply one of two accounting techniques: "first-in, first out" ("FIFO") and "last-in, first-out" ("LIFO").   Under FIFO, stocks acquired first are assumed to have been sold first in the calculation of losses; under LIFO, stocks acquired most recently are assumed to have been the first sold.   Zhu's losses under FIFO are approximately $228,455; under LIFO, they are approximately $177,977.   Thus, regardless of whether FIFO or LIFO is applied, Zhu's losses

are less than Zheng's losses, even after Zheng's number is adjusted downward to comply with the PSLRA's damages limitation.

Mr. Zhu argues that Mr. Zheng's $14,500 in losses on option contracts should not be included in the loss calculation because they are not "part of the relief sought by the class." See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  In support, Zheng contends that the three class complaints filed do not include options as part of the securities that are the subject of the complaints.  While the Bai Complaint and the Pearlman Complaint specifically identify the class members as purchasers of LITB's ADSs, the Sabile Complaint states in the first paragraph under "Plaintiff's Class Action Allegations" that "Plaintiff brings this action . . . on behalf of a Class, consisting of all those who purchased or otherwise acquired LightInTheBox securities during the Class Period and were damaged thereby."  Sabile Compl. ¶ 25 (emphasis added).  All three complaints seek damages for investment losses attributable to defendants' fraudulent misstatements or omissions.  Neither Mr. Zhu nor any other party has suggested any other reason that options purchasers should be excluded from the consolidated class; to the contrary, all movants agreed that consolidation of these three cases was appropriate without raising any objection that the Sabile Complaint's class definition was overbroad.  Thus, Mr. Zheng's options-related losses are properly considered in determining the presumptive lead plaintiff under the PSLRA.

Youhua Zheng purchased 24,000 LITB ADS securities and 3,000 LITB options contracts on August 19, 2013, and sold his shares and options contracts on three occasions following the end of the Class Period.[3]  Mr. Zheng's total losses on purchases of shares or options during the Class Period and their sale after the close of the Class Period are

---

[3] The options contracts purchased by Mr. Zheng were call options with an expiration date of September 21, 2013.  (Dkt. No. 31-1)

alleged to be $229,506.  No person whose holdings have been brought to the court's attention has a larger financial interest in the relief sought by the class than Mr. Zheng.  Mr. Zheng would appear to satisfy the adequacy and typicality requirements of Rule 23; the Court notes that, at this stage of the litigation, only a preliminary showing of typicality and adequacy is required.  In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 102 (S.D.N.Y. 2005).  The Court concludes that Mr. Zheng satisfies the statutory criteria and is the most capable person to represent the interests of the class.  Mr. Zheng is appointed as lead plaintiff.

The Court approves Mr. Zheng's selection of counsel, the Rosen Law Firm, P.A.  Phillip Kim has submitted an affidavit setting forth his law firm's experiences as class counsel and a resume of the individual partners.  He references several dozen securities class actions or shareholder derivative actions in which his firm has served as counsel.

CONCLUSION

The motion (Dkt. No. 11) of Youhua Zheng is GRANTED to the extent that Mr. Zheng is appointed as lead plaintiff and his retention of The Rosen Law Firm, P.A. is approved.  The motions of Anpu Zhu, Lawrence Bernard, and both LightInTheBox Investor Groups (Dkt. Nos. 8, 14, 16, and 23) are DENIED.  Leave to file a consolidated amended class action complaint is granted provided it is filed on or before January 10, 2014.  Any pre-motion letter by defendants is due January 24, 2014.  A conference will be held February 14, 2014, at 12:15 PM.  The Clerk is directed to administratively close 13 Civ. 6929 (PKC) and 13 Civ. 7310 (PKC).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 21, 2013